1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                               DISTRICT OF OREGON

9                               PORTLAND DIVISION

10

11

12  MONICA CURTEAN-GARLAND, an              No. 3:13-cv-00501-HU
    individual,
13                                          **FINDINGS AND**
              Plaintiff,                    **RECOMMENDATION**
14
          v.
15
    WINCO HOLDINGS, INC., an Idaho
16  corporation, and ELIZABETH
    HOOVER, an individual,
17
              Defendants.
18

19  Martin C. Dolan
    DOLAN GRIGGS LLP
20  1130 S.W. Morrison, Suite 630
    Portland, Oregon 97205
21  Telephone: (503) 228-7500
    Facsimile: (503) 243-1188
22
          Attorney for Plaintiff
23
    Thomas C. Sand
24  Naomi Levelle-Haslitt
    MILLER NASH LLP
25  3400 U.S. Bancorp Tower
    111 S.W. Fifth Avenue
26  Portland, Oregon 97204
    Telephone: (503) 224-5858
27  Facsimile: (503) 224-0155

28        Attorneys for Defendants

    Page 1 - FINDINGS AND RECOMMENDATION

1  HUBEL, Magistrate Judge:

2      Pursuant to 28 U.S.C. § 1447(c), Plaintiff Monica Curtean-
3  Garland ("Plaintiff") moves to remand this employment-related
4  action to the Circuit Court of the State of Oregon for the County
5  of Multnomah.   For the reasons that follow, Plaintiff's motion
6  (Docket No. 9) should be GRANTED.

7                    **I. FACTS AND PROCEDURAL HISTORY**

8      In 2010, Plaintiff was hired by Defendant WinCo Holdings, Inc.
9  ("WinCo") to work as a cashier.  In 2011, Plaintiff became pregnant
10 and was subsequently placed on medical leave following her last day
11 of work in early April 2012.  A little over a week later, Plaintiff
12 gave birth to her son.  In mid-June 2012, Plaintiff attempted to
13 elicit information regarding a possible return date, but apparently
14 never received a response.  As a result, on January 29, 2013,
15 Plaintiff filed a complaint in Multnomah County Circuit Court
16 against WinCo and its Human Resources Manager, Defendant Elizabeth
17 Hoover ("Hoover") (collectively, "Defendants"), alleging a cause of
18 action for violation of the Oregon Family Leave Act ("OFLA"), ORS
19 659A.150-.186, and a cause of action for aiding and abetting sexual
20 harassment in violation ORS 659A.030(1)(g).   Plaintiff sought
21 economic and non-economic damages in the amount of $56,661.44, as
22 well as reasonable attorney's fees pursuant to ORS 659A.885.

23     On March 22, 2013, WinCo removed the case to federal court on
24 the basis of diversity of citizenship.  According to the notice of
25 removal, WinCo is a corporation organized and existing under the
26 laws of Idaho with its principal place of business in Idaho, Hoover
27 is a citizen of Idaho, and Plaintiff is a citizen of Oregon.  The
28 notice of removal also states that Hoover consents to removal and

Page 2 - FINDINGS AND RECOMMENDATION

1  that the amount in controversy exceeds $75,000.  The parties do not
2  dispute whether complete diversity exists in this case.  *See* 28
3  U.S.C. § 1332(c)(1) (explaining that "a corporation shall be deemed
4  to be a citizen of any State by which it has been incorporated and
5  of the State where it has its principal place of business"); *Kanter*
6  *v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A
7  person's domicile is her permanent home, where she resides with the
8  intention to remain or to which she intends to return.")  Instead,
9  they dispute whether the required amount in controversy is
10 satisfied, given the fact that WinCo factored Plaintiff's
11 prospective attorneys' fees into the computation.  This led to the
12 filing of Plaintiff's timely motion to remand on April 10, 2013,
13 which is now before the Court.

14                          **II. LEGAL STANDARD**

15      Under the federal removal statute, "[a]ny civil action may be
16 removed to federal district court so long as original jurisdiction
17 would lie in the court to which the case is removed."  *Matheson v.*
18 *Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)
19 (citing 28 U.S.C. § 1441(a)).  District courts generally have
20 original jurisdiction over all civil actions (1) "arising under the
21 Constitution, laws, or treaties of the United States," 28 U.S.C. §
22 1331, and (2) "where the matter in controversy exceeds the sum or
23 value of $75,000" and there is complete diversity of citizenship.
24 28 U.S.C. § 1332(a).

25      A district court may remand an action to state court for lack
26 of subject matter jurisdiction or a defect in the removal
27 procedure.  *See* 28 U.S.C. § 1447(c).  "A motion to remand the case
28 on the basis of any defect other than lack of subject matter

Page 3 - FINDINGS AND RECOMMENDATION

1  jurisdiction must be made within 30 days after the filing of the
2  notice of removal under section 1446(a)."  *Id.*  "The burden of
3  establishing federal jurisdiction is on the party seeking removal,
4  and the removal statute is strictly construed against removal
5  jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d
6  1261, 1265 (9th Cir. 1999), *overruled on other grounds, Abrego*
7  *Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006).  The
8  party seeking removal also has the burden of showing that it has
9  complied with the procedural requirements for removal. *Schwartz v.*
10 *FHP Int'l Corp.*, 947 F. Supp. 1354, 1360 (D. Ariz. 1996).

11                        **III. DISCUSSION**

12     Currently there is disagreement among the district courts in
13 "this circuit as to whether attorneys' fees incurred after the date
14 of removal are properly included in the amount in controversy,"
15 *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL
16 94109, *2 (D. Ariz. Jan. 6, 2010), and the Ninth Circuit has yet to
17 rule on the issue.  *Reames v. AB Car Rental Serv., Inc.*, 899 F.
18 Supp. 2d 1012, 1018 (D. Or. Mar. 8, 2012) (Marsh & Papak, JJ.). One
19 school of thought is that "[w]hen estimating attorney's fees for
20 the purposes of establishing jurisdiction, the only fees that can
21 be considered are those incurred *as of the date of removal*."
22 *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, at
23 *4 (N.D. Cal. 1999) (emphasis added).  The other school of thought
24 is that "the court may consider a reasonable estimate or projection
25 of attorney fees likely to be expended through conclusion of the
26 case." *Reames*, 899 F. Supp. 2d at 1015.

27     Decisions from this court have fallen on both sides of the
28 ledger.  For example, in *Reames*, Judge Papak determined that it

Page 4 - FINDINGS AND RECOMMENDATION

"would be inappropriate to include in calculation of the amount in controversy any fees unaccrued and therefore necessarily speculative—at the time removal was effected." *Id.* at 1020. In so holding, Judge Papak agreed with the Seventh Circuit's "tacit suggestion" in *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-59 (7th Cir. 1998), that "it is impossible to devise any workable actuarial formula for determining the amount of attorney fees that may be reasonably anticipated at the time of removal." *Reames*, 899 F. Supp. 2d at 1021 (internal quotation marks omitted). As Judge Papak went on to explain,

> [a]ny attempt to do so must necessarily rely on wholly arbitrary decisions regarding, for example, whether or not to consider the possibility of pre-trial settlement of a removed dispute, whether or not to consider the possibility that fees will be incurred post-trial in connection with appellate proceedings, and how to define the universe of material historical data to which the formula should be applied. In addition, my jurisprudential experience leads me to conclude that it is highly unlikely that attorney fees fit a normal or any other regular distribution; to the contrary, I believe it is likely that attorney fees are extremely irregularly distributed, and marked by high positive kurtosis and skew. That is, any such actuarial formula, no matter how exquisitely crafted, will inevitably and systematically produce dramatically inaccurate predictions a significant proportion of the time. I therefore recommend that this court adopt the rule that attorneys' fees anticipated to be incurred after the date of removal . . . are not properly included in calculation of the amount in controversy for jurisdictional purposes.

*Id.* Because there was no showing regarding attorney's fees the plaintiff may have incurred *prior* to removal, Judge Papak concluded that the case should be remanded to state court. *Id.*

Six years earlier, Judge King reached the opposite result in *Beaver v. NPA Intern., Inc.*, 451 F. Supp. 2d 1196 (D. Or. 2006). In that case, Judge King concluded that it was appropriate to consider attorney fee awards from "sufficiently similar" cases as a

Page 5 - FINDINGS AND RECOMMENDATION

reasonable estimate or projection of attorney fees likely to be expended through conclusion of the case. *See Beaver*, 451 F. Supp. 2d at 1199-1200 (concluding that "it is more likely than not that more than $38,000 worth of attorneys fees at the administrative and trial court levels are in controversy in this case [based on the decisions discussed above].") However, Judge King also noted that the plaintiff sought "front pay and benefits in an amount to be determined at trial, and expressly reserved the right to amend the complaint to assert a claim for punitive damages," which are part of the amount in controversy in a civil action. *Id.* at 1200. Thus, Judge King held that the plaintiff's "claim for attorneys fees, the potential claim for punitive damages, and the claim for front pay, taken together with the $37,000 in back pay and non-economic damages specifically sought in the complaint, more likely than not total an amount in controversy greater than the $75,000 jurisdictional threshold." *Id.*

In resolving Plaintiff's motion to remand, the Court is called upon to choose between these competing approaches to determining the amount in controversy. In Defendants' view, following the approach taken by Judge Papak in *Reames* "would undermine, if not swallow," (Defs.' Resp. at 4), the general rule that "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (stating that "[t]he amount in controversy includes the amount of damages in dispute, as well as attorney's fees, if authorized by statute"), *cert. denied*, 549 U.S.

Page 6 - FINDINGS AND RECOMMENDATION

1  822 (2006).  To illustrate, Defendants note that because § 1446(b)
2  provides that the notice of removal must be filed within thirty
3  days of the defendant's receipt "through service or otherwise" of
4  the complaint, 28 U.S.C. § 1446(b), and because "it costs so little
5  to draft a complaint, it would be a rare case in which the amount
6  of attorney fees already incurred at the time of removal would have
7  any impact at all." (Defs.' Resp. at 4.)  Defendants therefore ask
8  the Court to consider evidence from analogous cases as a reasonable
9  estimate or projection of attorney fees likely to be expended
10 through conclusion of this case, as Judge King did in *Beaver*.

11      The Court is not persuaded by Defendants' arguments.  First,
12 the facts of this case are sufficiently distinguishable from *Beaver*
13 to make it inapposite.  Unlike *Beaver*, there is no indication in
14 this case that Plaintiff is seeking (1) fees incurred at the
15 administrative level, (2) an award of front pay, or (3) an award of
16 punitive damages.  In adopting Judge Papak's findings and
17 recommendation in *Reames*, Judge Marsh distinguished *Beaver* on the
18 same grounds.  *See Reames*, 899 F. Supp. 2d at 1015-16 (same).
19 Second, the rule enunciated in *Reames* better accounts for the fact
20 that "jurisdiction depends on the state of affairs when the case
21 begins," *Gardynski-Leschuck*, 142 F.3d at 958, and the fact that
22 "[t]he removal statute is strictly construed against removal
23 jurisdiction."  *Provincial Gov't of Marinduque v. Placer Dome,*
24 *Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Healy v. Ratta*,
25 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence
26 of state governments, which should actuate federal courts, requires
27 that [federal courts] scrupulously confine their own jurisdiction
28

Page 7 - FINDINGS AND RECOMMENDATION

1  to the precise limits which the [removal] statute has defined.")
2  (citation and internal quotation marks omitted).

3      Third, and finally, endorsing the rule proposed by Defendants
4  would have a chilling effect on a plaintiff's good faith ability to
5  draft his or her complaint in such a way so as to avoid federal
6  jurisdiction.  *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d
7  994, 999 (9th Cir. 2007) (stating that "a plaintiff may sue for
8  less than the amount she may be entitled to if she wishes to avoid
9  federal jurisdiction and remain in state court"); *Holmes Group,*
10 *Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831
11 (2002) (stating that plaintiffs can eschew "claims based on federal
12 law . . . to have the cause heard in state court"); *Anderson v.*
13 *Bayer Corp.*, 610 F.3d 390, 393 (7th Cir. 2010) (explaining that the
14 general rule in a diversity case is that plaintiffs "may include
15 (or omit) claims or parties in order to determine the forum");
16 *Dell'Aera v. Home Depot, U.S.A., Inc.*, No. 3:07-cv-525, 2007 WL
17 2071632, at *4 (D. Conn. July 13, 2007) (recognizing the
18 established view that "the complaint is accorded deference as to
19 the amount of damages demanded.")  Indeed, a defendant would be
20 able to defeat a plaintiff's choice of forum simply by proffering
21 speculative evidence regarding attorneys' fees that may never be
22 incurred or awarded.

23     Consistent with *Reames*, the Court concludes that attorneys'
24 fees anticipated to be incurred after the date of removal are not
25 properly included in calculation of the amount in controversy.
26 Since Defendants have not submitted any evidence as to the amount
27 of attorneys' fees Plaintiff accrued at the time removal was
28 effected, Defendants have failed to prove by a preponderance of the

Page 8 - FINDINGS AND RECOMMENDATION

1  evidence that the amount in controversy exceeds the $75,000

2  jurisdictional threshold.  *See Guglielmino v. McKee Foods Corp.*,

3  506 F.3d 696, 700-701 (9th Cir. 2007).  Accordingly, this action

4  should be remanded to Multnomah County Circuit Court for further

5  proceedings in that forum.

6                          **IV. CONCLUSION**

7      For the reasons stated, Plaintiff's motion (Docket No. 9)

8  should be GRANTED.

9                      **V. SCHEDULING ORDER**

10     The Findings and Recommendation will be referred to a district

11 judge.  Objections, if any, are due **July 3, 2013**.  If no objections

12 are filed, then the Findings and Recommendation will go under

13 advisement on that date.  If objections are filed, then a response

14 is due **July 22, 2013**.  When the response is due or filed, whichever

15 date is earlier, the Findings and Recommendation will go under

16 advisement.

17     Dated this 14th day of June, 2013.

18                          /s/ Dennis J. Hubel

19                         _____
                               DENNIS J. HUBEL
20                          United States Magistrate Judge

21

22

23

24

25

26

27

28

Page 9 - FINDINGS AND RECOMMENDATION